UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81115-CIV-MARRA
(APPEAL FROM BANKRUPTCY CASE NO. 11-01011-EPK)

THE CADLE COMPANY OF
CONNECTICUT, INC.,

      Appellant,

v.

JOHN E. BENEVENTO,

      Appellee.
_____/

**OPINION AND ORDER**

Appellant The Cadle Company of Connecticut, Inc. ("Cadle") filed this bankruptcy appeal challenging the final judgment on Cadle's complaint objecting to discharge in favor of Appellee John E. Benevento in Bankruptcy Case No. 11-01011-EPK.[1] The parties have fully briefed the issues. For the reasons that follow, the Court affirms the bankruptcy court's order.

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Federal Rule of Bankruptcy Procedure 8013 states that a district court shall review the factual findings of a bankruptcy court for clear error. The District Court reviews *de novo* the conclusions of law of the bankruptcy court and application of the law to the particular facts of the case. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir.2009); and *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*."). Here,

---

[1] For purposes of clarity, documents filed in this docket, 12-81115-CIV-KAM, shall be cited as "(DE __)." Documents filed in the adversary bankruptcy proceeding, 11-01011-EPK, shall be filed as "(BKC ADV, DE __)."

because Cadle disagrees with the bankruptcy court's finding that Cadle did not sustain its burden of proof, the clearly erroneous standard applies. *See In re Difabio*, 363 B.R. 343, 344 (Bankr. E.D.N.Y. 2007).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court, upon examining the entire evidence, is left with the definite and firm conviction that a mistake has been committed. If the lower court's assessment of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 485 B.R. 460, 468 (S.D. Fla. 2013) (citations omitted).

Based upon the Court's review of the briefs and the record (including the bankruptcy court's docket, which includes over 600 pages of trial transcript in the adversary proceeding), it is apparent that Cadle seeks to have this Court "substitute its evaluation of the evidence, including an assessment of the credibility of the witnesses who testified in the bankruptcy court proceeding, for that of the bankruptcy court." *In re Difabio*, 363 B.R. at 344. But as in *In re Difabio*—a case in which Cadle appealed a bankruptcy court decision on similar grounds—"[t]he applicable standard of review makes it clear that that is inappropriate. There is more than sufficient evidence to support the bankruptcy court's findings of fact, and the bankruptcy court's reasoning is set forth in clear and persuasive fashion" in the memorandum opinion that was incorporated into the final judgment. *Id.*

Cadle—who "alleges that [Appellee] structured his business and personal financial affairs over a period decades (even before [Cadle] had a claim against [Appellee]) with the intent of

2

preventing [Cadle] from collecting on its judgment" (BKC ADV, DE 105 at 2)—filed its complaint objecting to Appellee Benevento's discharge under 11 U.S.C. § 727(a)(2)(A), 11 U.S.C. § 727(a)(3), and 11 U.S.C. § 727(a)(5). (BKC ADV, DE 1).[2] The Court addresses each objection in turn.

Section 727(a)(2)(A) provides, in pertinent part,

(a) The court shall grant the debtor a discharge, unless—

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>> (A) property of the debtor, within one year before the date of the filing of the petition . . . .

Cadle argues that the bankruptcy court erred by failing to consider Cadle's claim of asset diversion of the "fruits of one's labor" to family businesses as a transfer or concealment of property within the meaning of the statute. To that end, Cadle suggests that Appellee uses artifices, such as his family and trusts, as a shield from creditors by increasing the value of family owned real estate without direct compensation.

Of course, "the diversion of the 'fruits of one's labor' may constitute a transfer or concealment of property within the meaning of section 727(a)(2)." *Coady v. D.A.N. Joint Venture, L.P.*, No. 08-81332-CIV, 2009 WL 9041189, at *7 (S.D. Fla. 2009), *aff'd*, 588 F.3d 1312 (11th Cir. 2009). But implicit in Cadle's argument that Appellee diverted the fruits of his labor to his family is the argument that Appellee *retained an interest in those fruits. See Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Under § 727(a), a relevant concealment can occur only if *property of the debtor* is concealed. Thus, it is clear from the language of the statute that the debtor must possess

---

[2] Cadle conceded its claim under 11 U.S.C. § 727(a)(4)(D) in its post-trial brief.

some property interest in order to be barred from discharge on the grounds of a 'continuing concealment.'") (emphasis in original). The bankruptcy court may not have expressly addressed whether fruits of the debtor's labor were diverted, but that analysis was unnecessary because the court implicitly concluded that, even if fruits were diverted, Appellee did not retain any interest in them. In other words, the question of whether fruits are diverted and the question of whether a debtor retains an interest in those fruits are necessarily distinct. More often than not (and as is the case here), the latter question will involve a determination of intent—a determination the trial court is uniquely suited to make by virtue of credibility determinations. *See In re Jennings*, 533 F.3d 1333, 1338 (11th Cir. 2008) ("Deference to the bankruptcy court's findings is particularly appropriate because the intent determination will often depend on that court's assessment of the debtor's credibility.") (quotations and citation omitted). And "where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court's choice between them will not be viewed as clearly erroneous." *In re Gonzalez*, 302 B.R. 745, 752 (Bankr. S.D. Fla. 2003) (quoting *Matter of Krehl*, 86 F.3d 737, 744 (7th Cir. 1996)).

Here, the trial court concluded that Appellee did not retain an interest in any property based on both testimony and documentary evidence:

> As discussed in detail in the [c]ourt's findings of fact . . ., there is no credible evidence that the [Appellee] Debtor retains any interest in any of these assets or entities, or that he receives any ongoing benefit other than the part-time use of a car and the fact that his wife, Joan, uses certain loan repayments she receives . . . to make payments on the Florida home owned by the Debtor and Joan. A number of the transactions complained of by [Cadle] have their inception prior to the Debtor even becoming obligated on the guaranty that give rise to [Cadle's] claim. Many arose prior to the Debtor learning that [Cadle] had a claim against him. The various transactions and entities are documented extensively. Indeed, the Debtor and his family members maintained detailed records of their transactions, right down to keeping copies of receipts presented by the Debtor for reimbursement. Many of the

> transactions are reflected in recorded documents. Some were even approved by a Connecticut state court. There is no credible evidence that the Debtor concealed anything that could create a claim under section 727(a)(2)(A).

(BKC ADV, DE 105 at 20–21). Among the findings of fact to which the bankruptcy court referred above were detailed findings rejecting Cadle's suggestion that Appellee maintained or retained any interest in the family property. The mere fact that the bankruptcy court did not *expressly* refer to "the fruits of Appellee's labor" does not support Cadle's claim that the bankruptcy court did not consider whether the distribution of the fruits of that labor somehow constituted concealment of property. And in any event such a claim is belied by the record.[3] Thus, based upon a review of the record, this Court cannot say that the bankruptcy court's conclusion was impermissible. *See In re Espino*, 806 F.2d 1001, 1003 (11th Cir. 1986) (affirming the rejection of a creditor's objection under § 727(a)(2)(A) because the bankruptcy court's decision as to continuing concealment was plausible and, as such, could not be reversed even though the appellate court might have weighed the evidence differently had it been sitting as the trier of fact).

Cadle's "classic" continuing concealment claim was properly rejected (and is likewise affirmed) on similar grounds. Nothing in the record supports Cadle's suggestion that the bankruptcy court erroneously placed the weight of his findings on the testimony of Appellee and his wife to the exclusion of the documentary evidence. Rather, the record suggests that the bankruptcy court properly considered the totality of the circumstances, including the testimony of Appellee and his wife (which the bankruptcy court referred to as credible on several occasions) as well as the entirety

---

[3] Cadle argues that the bankruptcy court erroneously failed to even address a "look back" period under § 727(a)(2)(A). That argument is squarely contradicted by the bankruptcy court's opinion. In response to Cadle's argument that a five-year look back period was appropriate, the court concluded that it "need not determine whether this five year period is an appropriate scope for the [c]ourt's examination as the evidence presented by [Cadle], even going back beyond this period, does not support [Cadle's] claims under section 727(a)(2)(A)."

5

of the documentary evidence produced both before and during trial.[4]

In Cadle's third argument it claims that the bankruptcy court erred by misapplying § 727(a)(3) to the facts and by relying on oral testimony for the explanation of Appellee's failure to keep records, produce records, and falsify documents. Section 727(a)(3) provides,

> (a) The court shall grant the debtor a discharge, unless—
>
> > (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

The bankruptcy court has "wide discretion in determining the sufficiency of records," and "[d]ue regard must be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Id.* at *14 (citation omitted). *Coady*, 2009 WL 9041189, at *13–*14 (citations omitted).

Here, the bankruptcy court found that "the record paints a complete and detailed picture of [Appellee's] financial condition and business transactions over a period exceeding two decades" and that "[a]s is apparent from the [c]ourt's findings of fact . . ., there is no credible evidence that [Appellee has an interest in any of the assets or entities, or that he receives any income from the various entities, pointed to by [Cadle]. There is no need for [Appellee] to maintain recorded information regarding assets and entities that he has no material interest in." (BKC ADV, DE 105 at 22). The bankruptcy court further noted that "even if [Appellee] had an interest in any of the entities or assets pointed to by [Cadle in its § 727(a)(3) claim], [Appellee] and his family members produced substantial financial and other records relating to these properties and entities, much of

---

[4] The cases upon which Cadle relies in support of its "continuing concealment" claim were distinguished by the bankruptcy court and found to be inapplicable and unpersuasive. (BKC ADV, DE 105 at 16–18). This Court adopts the bankruptcy court's analysis of those cases.

which was admitted at trial. The record reflects detailed information regarding any and all material transactions going back well beyond five years prior to the petition date. Thus, even if [Appellee] had an interest in any of these properties or entities, [Cadle] did not meet its burden under [§ 727(a)(3)]." (BKC ADV, DE 105 at 22–23 n.14).

Furthermore, the Court rejects Cadle's assertion that the bankruptcy court erred by relying exclusively on oral testimony for the explanation of Appellee's failure to keep records, produce records, and falsify documents. *See In re Tanglis*, 344 B.R. 563, 569 (Bankr. N.D. Ill. 2006) ("Mere testimony from the debtors regarding their version of their financial transactions is insufficient to satisfy the duty imposed by § 727(a)(3) . . . ."). Undoubtedly, the bankruptcy court relied on oral testimony. But there is nothing in the record to suggest that the bankruptcy court did not consider the voluminous documentary evidence when it made its extensive findings that Appellee sufficiently kept, maintained, and produced records for purposes of § 727(a)(3).

Finally, Cadle argues that the bankruptcy court erred by relying on Appellee's testimony in denying Cadle's § 727(a)(5) claim. That section of the statute provides,

> (a) The court shall grant the debtor a discharge, unless—
>
> > (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

Below, Cadle pointed to the proceeds of a settlement (the "Amodio settlement") and a specific property ("46 South Gate") in support of its claim under § 727(a)(5). The bankruptcy court rejected Cadle's position by noting that "[Appellee] provided detailed and credible evidence of the disposition of the proceeds from his settlement with Mr. Amodio. Likewise, [Appellee] provided all relevant documents in connection with transactions affecting 46 South Gate, including copies of loan

documents, and his credible testimony regarding his personal involvement in those transactions. The Court finds all of these explanations satisfactory." (BKC ADV, DE 105 at 24). This Court concludes that the bankruptcy court's findings under § 727(a)(5) were not clearly erroneous.

After four days of trial and a review of a voluminous record, the bankruptcy court concluded that both [Appellee] and his wife were "thoroughly credible" witnesses and that their testimony was consistent with the documentary evidence admitted at trial and contradicted all of Cadle's material allegations. (BKC ADV, DE 105 at 3). The bankruptcy court was in the best position to assess the witnesses' testimony. Thus, after this Court's review of the record it concludes that the bankruptcy court had ample justification for its ruling. *See Jennings*, 533 F.3d at 1340.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the final judgment on Cadle's complaint objecting to discharge in favor of Appellee John E. Benevento in Bankruptcy Case No. 11-01011-EPK (BKC ADV, DE 106) is **AFFIRMED.** The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of September, 2013.

_____
KENNETH A. MARRA
United States District Judge